**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

FILED

02 JUL 16 AM 11:08

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **ROBERT L. GAMBLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **CITY OF FLORENCE, ALABAMA,** | ) |
| | ) |
| **Defendant.** | ) |

**Civil Action No. CV-01-S-2441-NW**

ENTERED

JUL 16 2002

**MEMORANDUM OPINION**

This action is before the court on: defendant's motion to enforce a court order and for sanctions (doc. no. 11); defendant's motion to remove this case from the court's jury docket (doc. no. 15); and, plaintiff's motion requesting a jury trial (doc. no. 17). Upon consideration of the motions, pleadings, and oral arguments, this court concludes that defendant's motion to remove this case from the court's jury docket is due to be granted, while plaintiff's motion requesting a jury trial is due to be denied. The court further concludes that defendant's motion to enforce a court order and for sanctions is due to be granted, to the extent that sanctions are awarded against plaintiff's attorneys. Defendant's motion to enforce the court order is moot, to the extent that the documents and disclosures sought by defendant pursuant to the court's order of February 14, 2002 have been supplied to defendant.

## I. STATEMENT OF FACTS

Plaintiff, Robert L. Gamble, is an employee of defendant City of Florence, Alabama. He complains that he was denied a promotion because of his race (African-American). Plaintiff consequently has sued defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging racial discrimination.

According to plaintiff, the City of Florence, Alabama, posted a job and promotional opportunity notice for a"Groundsman-Electrical Construction and Maintenance" position in the City's Electrical Department.[1]  The posting listed five mandatory requirements for eligibility:  the applicant needed a valid driver's license; a valid commercial "A" driver's license; a high school diploma or general equivalency degree certificate; the ability to bend and lift at least one hundred pounds; and the ability to operate all vehicles necessary for construction, maintenance, and service work.[2]  Plaintiff states that his qualifications for the position included a high school diploma awarded by James Madison High School on April 12, 1999, which he earned in a distance learning program.[3]  At the time of his application for the position, plaintiff had been employed with the City for approximately twenty-four years.[4]  Once plaintiff earned his high school diploma, he avers that he became the "most qualified and most senior of the entire applicant pool, which consisted of approximately 27 persons."[5]

Plaintiff claims that, on January 18, 2000, defendant informed him that it questioned the merits of the high school diploma he had provided to the City in pursuit of the Electrical Department position.[6]  According to plaintiff, defendant told him that it believed James Madison High School was not accredited by the Southern Association of Colleges and Schools ("SACS").[7]  Although

---

[1] *See* Complaint ¶ 7.

[2] *See id.* ¶ 11.

[3] *See id.* ¶¶ 9-10.

[4] *See id.* ¶ 12.

[5] *Id.*

[6] *Id.* ¶ 20.

[7] *See id.* ¶¶ 14, 18-20.

plaintiff alleges that he subsequently submitted proof of the high school's regional and national accreditation to defendant, City attorney Greg L. Smith informed him by correspondence on February 28, 2000, and again on March 14, 2000, that the City was not convinced that plaintiff held an accredited high school diploma.[8]  Mr. Smith allegedly also stated that plaintiff should refrain from applying for other City employment that required a high school diploma or equivalency degree, if his application was based on the James Madison High School diploma.[9]  When plaintiff was rejected for the Electrical Department position on March 14, 2000,[10] he filed a grievance with the City of Florence through its internal administrative system.[11]

Plaintiff claims that white males with similar distance learning diplomas hold supervisory positions with the City of Florence.[12]  Plaintiff also claims that the persons selected for the Electrical Department position at issue here were white males who had less seniority and fewer qualifications than he did.[13]  Finally, plaintiff contends that his work environment has been marked by discriminatory practices, a bias against African Americans, and that, in the twenty-four years plaintiff has been employed by defendant, he has never been selected for a promotion.[14]

Given these facts, plaintiff accordingly filed a charge of discrimination with the Equal

---

[8] *See id.* ¶¶ 21-23.

[9] *See id.* ¶ 23.

[10] *See id.* ¶ 13.  The date on which plaintiff filed his grievance is not entirely clear, as plaintiff states in his complaint that he filed the grievance on March 14, 2000, but also states that the City responded to his grievance on January 18, 2000. *See, e.g., id.* ¶¶ 13, 18-19.

[11] *See id.*

[12] *See id.* ¶ 24.

[13] *See id.* ¶ 26.

[14] *See id.* ¶ 27.

Employment Opportunity Commission on May 12, 2000, alleging violations of Title VII and 42 U.S.C. § 1981. Plaintiff filed this action on September 28, 2001, following his receipt of a notice of right to sue from the EEOC on July 12, 2001.[15] Plaintiff seeks both compensatory and punitive damages to remedy defendant's alleged race-based discrimination.

## II. DISCUSSION

**A.     Defendant's Motion to Remove Case from Court's Jury Docket**

Defendant has filed a motion asserting that this action should be removed from the court's jury docket, because plaintiff did not make a timely jury demand pursuant to Federal Rule of Civil Procedure 38(d).[16] All parties are in accord that, while the civil cover sheet attached to the complaint denotes, with two typewritten "X"s, that plaintiff demanded a jury trial, nowhere in the complaint did plaintiff make such a jury demand. Plaintiff also did not in any other pleading make a separate request for a jury trial, other than in the form of his March 28, 2002 motion (doc. no. 17). Despite this, the court's docket reflects that plaintiff in fact demanded a jury trial, an apparent clerical error by the clerk's office.[17]

The Seventh Amendment to the Constitution preserves the right to a trial by jury in suits "at common law." U.S. Const. amend. VII. According to Federal Rule 38, a party makes a timely demand for a jury trial by "(1) serving upon the other parties a demand therefor in writing at any time after commencement of the action and *not later than 10 days after the service of the last pleading to such issue*, and (2) filing the demand as required by 5(d)." Fed. R. Civ. P. 38(b)

---

[15] *See id.* ¶ 28.

[16] *See* Defendant's Motion to Remove Case (doc. no. 15), ¶ 3.

[17] *See* Civil Docket for *Gamble v. City of Florence* (noting, in heading, that plaintiff has made a jury demand).

(emphasis supplied). This constitutional right to a civil jury trial is not absolute, however, and may be waived in the event that a party fails to make a timely demand for a jury trial. *See Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995); *see also Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir. 1979).[18] A waiver "by failure to make a timely demand is complete even though it was inadvertent and unintended and regardless of the explanation or excuse." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2320, at 148 (1995). Even so, this court is mindful of the fact that "a waiver of a valid jury demand 'is not to be lightly inferred.'" *Haynes v. W.C. Caye & Company, Inc.*, 52 F.3d 928, 930 (11th Cir. 1995) (quoting *Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir. 1992)). Thus, any such waiver should be "scrutinized 'with the utmost care.'" *Id.* (quoting *Banff, Ltd. v. Colberts, Inc.*, 996 F.2d 33, 36 (2d Cir. 1993)).

The only pleadings filed in this action in which a jury demand would have been proper were plaintiff's complaint and defendant's answer. Accordingly, the "demand for jury trial must [have] be[en] served *not later than ten days after service of the answer*." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2320, at 148 (1995) (citing *McCorstin v. U.S. Department of Labor*, 630 F.2d 242, 244 (5th Cir. 1980); *Engbrock v. Federal Insurance Co.*, 370 F.2d 784 (5th Cir. 1967)). Defendant filed its answer to plaintiff's complaint on October 17, 2001; defendant's answer did not include a jury demand. Although the date of the answer's service on plaintiff is unclear, plaintiff does not object to defendant's statement that plaintiff had until November 1, 2001 to respond to defendant's answer with a jury demand.[19] The parties are in accord

---

[18] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[19] *See* Defendant's Motion to Remove Case (doc. no. 15), ¶ 5.

that plaintiff failed to make such a jury demand.

Given the constitutional nature of the right at issue, courts may, in their discretion and even in the face of an untimely jury demand, grant a belated motion for a jury demand under Rule 39(b). *See* Fed. R. Civ. P. 39(b); *see also Cox*, 607 F.2d at 144. Rule 39(b) provides that, "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues." Fed. R. Civ. P. 39(b). Federal courts are not required to allow an untimely jury demand, but "should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Cox*, 607 F.2d at 144 (quoting *Swofford v. B & W, Inc.,* 336 F.2d 406, 409 (5th Cir. 1964) (internal quotation marks omitted)). Federal courts considering whether to allow a belated motion requesting a jury trial have considered the following factors:

> whether the motion was made within a reasonable time after expiration of the period allowed by statute, whether the failure to make a demand was the result of such inadvertence, mistake, or excusable neglect as should justify allowing the motion, and whether permitting a jury trial would prejudice the rights of the adverse party. Finally, one of the most important factors in deciding whether to exercise discretion to allow a late demand appears to be the effect it would have on the court's docket.

9 *Wright & Miller*, § 2321, at 168 (citing 9 *Wright & Miller*, § 2334, at 192-94).

Plaintiff considers these factors in his motion requesting that this court permit him a trial by jury. He contends, first, that this action is best tried to a jury, because the "ever controversial issue of race discrimination requires that the intent of the alleged offending parties be investigated by a jury."[20] Plaintiff also avers that defendant will not be prejudiced by a jury trial, because a trial by jury will not interfere with either the parties' or the court's schedule. Finally, plaintiff states that

---

[20] Motion in Response (doc. no. 17), ¶ 5.

defendant only recently filed its motion to remove the action from the court's jury docket, which leads plaintiff to assume that the parties and their counsel have been pursuing this matter in discovery in anticipation of a jury trial.[21]

Defendant disagrees that this action would be best tried to a jury, and argues that this court is as fully competent to decide issues of discrimination as would be a jury.[22]  Defendant also states that it would be prejudiced by a jury trial, to the extent that the City of Florence would incur added time and expense in preparing for and conducting a trial by jury.[23]  Finally, defendant contends that it has relied on the fact that plaintiff made no jury demand in his complaint and, subsequently, on the fact that plaintiff did not amend his pleadings to include a jury demand, or file a supplemental pleading to request a jury within the period provided for by Rule 38.[24]

As a preliminary matter, the court notes that plaintiff's checkmarking of the "Yes" box on the civil cover sheet filed with his complaint does not meet the requirements of Federal Rule 38, and thus cannot be interpreted to constitute a proper jury demand.  *See Hollins v. Hoechst Celanese Corp.*, 134 F.R.D. 299, 299 (S.D. Ala. 1991).  This court agrees with the federal district and appellate courts that have determined that a civil cover sheet is nothing more than an administrative tool intended to streamline the work of the clerk's office.  *See Cox*, 607 F.2d at 143 & n.5 (finding that plaintiff did not make a timely jury demand although he believed he had done so by checking the appropriate box on the civil cover sheet); *see also Favors v. Coughlin*, 877 F.2d 219, 220-21 (2d

---

[21] *See id.*

[22] *See* Defendant's Reply (doc. no. 18), ¶ 1.

[23] *See id.* ¶¶ 2-3.

[24] *See id.* ¶ 5.

Cir. 1989) (holding that, even considering the leniency afforded *pro se* plaintiffs in the pleading process, a notation on a civil cover sheet is not sufficient to replace an actual jury demand); *Houston North Hospital Properties v. Telco Leasing, Inc.*, 688 F.2d 408, 410 (5th Cir. 1982) (holding that a request on a civil cover sheet for a jury trial is insufficient to preserve the right to a jury trial); *Hollins*, 134 F.R.D. at 299 (citing cases for same proposition).

This court concludes that plaintiff has failed to offer sufficient justification for his failure to comply with Federal Rule 38. Indeed, plaintiff did not offer an excuse or explanation — either in his motion to request a jury trial or at this court's March 22, 2002 hearing on these issues — as to why his complaint did not include a jury demand, why he did not file a supplemental pleading requesting a jury demand within ten days of defendant's answer, why he did not amend his complaint to include a jury demand by February 8, 2002 (the deadline set forth in this court's November 29, 2001 scheduling order), and further, why plaintiff waited nearly five months after the filing of the answer to make his first request for a jury trial. In the absence of any explanation to the contrary, plaintiff's failure to properly demand a jury trial thus appears to be the product of mere inadvertence. Other federal courts considering untimely jury demands have denied belated jury demands when the untimeliness resulted from inadvertence of the parties or their attorneys. *See, e.g., Bush v. Allstate*, 425 F.2d 393, 396 (5th Cir. 1970) ("It is not an abuse of discretion by a District Judge to deny a Rule 39(b) motion, however, when the failure to make a timely demand for a jury trial results from mere inadvertence on the part of the moving party."); *see also, e.g., Farias v. Bexar County Board of Trustees for Mental Health Mental Services*, 925 F.2d 866 (5th Cir. 1991) (finding that district court did not abuse its discretion when it refused to grant plaintiff a trial by jury when plaintiff offered no legitimate excuse for untimely jury demand); *Bell v. Cameron Meadows*

*Land Co.*, 669 F.2d 1278 (9th Cir. 1982) (finding no abuse of discretion by district court that held that attorney's preoccupation with dissolution of law firm was not a sufficient excuse for untimely filing of jury demand). Rule 38 is exceedingly clear on the time within which, and manner in which, jury demands must be made; in the absence of any explanation for plaintiff's failure to make a proper demand, this court is compelled to adhere to the dictates of Rule 38. Accordingly, plaintiff's request for a jury trial in this action is due to be denied, and defendant's motion to remove this case from its jury docket is due to be granted.

**B.     Defendant's Motion to Enforce the Court's February 14, 2002 Order and For Sanctions**

Defendant has filed a motion to enforce this court's February 14, 2002 order, and for sanctions for plaintiff's failure to comply with that order. The court's February 14 order was entered in response to defendant's February 8, 2002 motion to compel and for sanctions, in which defendant sought to compel plaintiff to provide defendant with documents it had requested during discovery. The February 14 order denied defendant's motions for sanctions, without prejudice to renew that motion. Defendant now has renewed its motion for sanctions.

This court's February 14 order required plaintiff to "file and serve full and complete responses to defendant's first request for production and defendant's request for production of documents issued with its notice to take deposition of plaintiff."[25]   That order also compelled plaintiff to "produce to defendant all school material in the possession of plaintiff and an executed authorization form allowing defendant access to plaintiff's school materials that are not in his possession . . . ."[26] These disclosures and documents were to be provided to defendant's counsel in

---

[25] Order entered Feb. 14, 2002 (doc. no. 10).

[26] *Id.*

9

his office on or before February 22, 2002. Defendant complains in its motion to enforce the court's February 14 order that, on February 20, 2002, defendant's counsel, Gregg L. Smith, received a package from one of plaintiff's counsel, Terrinell Lyons.[27]  The package contained copies of documents and a letter from Ms. Lyons, which stated that the school-related documents enclosed had been produced to her by plaintiff. As of the date of filing of defendant's motion to enforce the court's February 14 order, however, defendant's counsel asserted that he had not received the court-ordered revised and complete responses to defendant's request for production of documents, or an executed authorization permitting defendant to access plaintiff's school records.[28]  These defects now appear to have been cured:  Ms. Lyons has since submitted to Mr. Smith an executed authorization form allowing defendant access to plaintiff's scholastic records, albeit on March 1, 2002, one week past the court-ordered February 22, 2002 deadline.[29]  In addition, at the court's March 22, 2002 hearing on these issues, defendant stated that plaintiff now has produced all documents responsive to defendant's request for production and its first request for production of documents.

Although plaintiff's apparent non-compliance with this court's February 14 order has been remedied, defendant seeks sanctions pursuant to Rule 37(a)(4)(A) and 37(b)(2) in the form of "reasonable expenses, including attorney's fees, incurred in making this Motion and Defendant's Motion to Compel and the other expenses related to Plaintiff's refusal to cooperate with the

---

[27] Plaintiff is also represented in this action by Byron R. Perkins, a Member with Birmingham, Alabama, law firm Gordon, Silberman, Wiggins & Childs.

[28] *See* Defendant's Motion to Enforce Court Order (doc. no. 11), ¶ 4.

[29] *See* Order entered February 14, 2002 (doc. no. 10).

discovery process."[30]  At the court's March 22, 2002 hearing on these issues, the court restricted

defendant's fee and cost petition to potentially recoverable fees and other expenses associated with

its motion to enforce the court's February 14 order.  Defendant specifically seeks $3,853.40 to

compensate it for attorney's fees and costs related to its motion to enforce the court's order.[31]

As grounds for this relief, Mr. Smith claims that he had to write three letters to plaintiff's

counsel in an attempt to obtain documents responsive to defendant's discovery requests, or

documents that should have been produced as part of plaintiff's initial disclosures; that he had to

make numerous phone calls to Ms. Lyons regarding these discovery requests; that he had to file a

motion to compel the sought-after discovery and this motion to enforce the court's February 14,

2002 order granting the motion to compel; that he will have to re-depose plaintiff regarding issues

raised by the untimely produced documents; and, ultimately, that defendant has "expended time and

expense in seeking to obtain documents that should have been produced in the normal course of

discovery."[32]

Ms. Lyons disputes these allegations, contending that she has not been uncooperative with

Mr. Smith during discovery.  Ms. Lyons does admit, however, that she failed to meet answer

deadlines for defendant's interrogatories and first request for production; Ms. Lyons also admits

that, although those answers and documents were due January 7, 2002, she did not reply to the

discovery requests until January 17, and only after Mr. Smith wrote Ms. Lyons threatening to file

a motion to compel plaintiff's compliance; that Mr. Smith permitted plaintiff's counsel an extension

---

[30] Defendant's Motion to Enforce Court Order (doc. no. 11), at 4.

[31] *See* Defendant's Submission in Support of Attorney's Fees and Costs (doc. no. 19), at 6.

[32] *Id.* ¶ 6.

11

to respond to his initial discovery requests until January 17; that Ms. Lyons promised at plaintiff's January 28, 2002 deposition to remit copies of scholastic documents in plaintiff's possession to Mr. Smith once she received them from plaintiff; and, that Ms. Lyons did not produce any of the school-related documents to Mr. Smith until February 19, 2002.[33]  Understandably, in the more than three weeks that it took both of plaintiff's counsel to remit plaintiff's school records to Mr. Smith, defendant's counsel contacted Ms. Lyons regarding the school documents' production by letter dated January 30, 2002, by telephone on February 7, 2002, and, ultimately, filed a motion to compel those documents on February 8, 2002.[34]  Consequently, this court granted defendant's motion to compel on February 14, 2002 (doc. no. 10).

Ms. Lyons appears to have timely complied, in part, with the court's February 14 order, albeit by *mailing* the school-related documents in plaintiff's possession to defendant's counsel by February 22, 2002.  Even so, Mr. Smith contends that the February 19 submission from Ms. Lyons did not include revised responses to discovery or an executed authorization form enabling defendant to access plaintiff's school records, as stated in the court's February 14 order.[35]

Federal Rule 37(a)(4)(A) provides, in relevant part, that if a federal court grants the motion of a party seeking to compel disclosure or discovery, or if the disclosure or requested discovery is provided to that party after the motion is filed,

> the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion . . . .

---

[33] *See* Plaintiff's Response (doc. no. 12), ¶¶ 2-14.

[34] *See id.* ¶¶ 6-7, 9.

[35] *See* Defendant's Reply (doc. no. 13), ¶ 4.

12

Fed. R. Civ. P. 37(a)(4)(A).  The court will order the moving party's reasonable expenses paid unless it finds that the motion was filed in the absence of a good faith effort to obtain the discovery or disclosure without the court's involvement, or if the non-producing or disclosing party's failure to satisfy the disclosure or discovery requests was "substantially justified," or such a sanction would be unjust  *Id.*  Rule 37(b)(2), also invoked by defendant in its motion to enforce, amounts to a non-exclusive list of the types of sanctions appropriate in the event of a court order pursuant to Rule 37(a), above, and also provides for a party, his attorney, or both to pay reasonable expenses, including attorney's fees, stemming from the failure to obey a court order.  *See* Fed. R. Civ. P. 37(b)(2).

Rule 37 sanctions are intended to: "1) compensate the court and other parties for the added expense caused by discovery abuses; 2) compel discovery; 3) deter others from engaging in similar conduct; and 4) penalize the offending party or *attorney*."  *Wouters v. Martin County, Florida*, 9 F.3d 924, 933 (11th Cir. 1993) (emphasis supplied) (citing cases).  While the most severe sanction — default or dismissal — requires a finding by the district court that the offending party or his attorney has engaged in willful or bad faith conduct, a court may impose a lesser sanction in the absence of bad faith or willfulness. *See BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994).  Ultimately, "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process."  *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982).

Based on the foregoing, the court concludes that sanctions are warranted against plaintiff's counsel — both Ms. Lyons and Mr. Perkins — for their failure to comply with at least two of this court's orders.  *See* Fed. R. Civ. P. 37(b)(2) (providing for sanctions against a party and/or his

13

attorney in the event the "party fails to obey an order to provide or permit discovery"). The court is in accord with defendant's counsel in stating that "[t]wo law firms were at fault. . . ."[36] As Mr. Smith notes, plaintiff's counsel appear not to have met a single discovery deadline in these proceedings thus far.[37] Further, although Mr. Smith has made a good faith effort to not involve this court in obtaining the discovery at issue here, plaintiff's counsel have compelled him by their inaction to repeatedly involve the court in these matters.

More importantly, plaintiff's counsel disobeyed the court's February 14 order to supply defendant's counsel with full and complete responses to defendant's first request for production and defendant's request that accompanied its notice to take plaintiff's deposition. Each of these disclosures and documents were ordered unequivocally to be produced "at the offices of defendant's counsel *on or before February 22, 2002.*"[38] While it appears that plaintiff's counsel did provide defendant's counsel with some of the school-related documents specified in the court's order by that date, albeit via United States mail, plaintiff's counsel nonetheless failed to produce revised and completed responses to defendant's counsel.[39] Mr. Smith stated at this court's March 22 hearing that these disclosures and documents were eventually produced, although it is not clear on what date he received them. It is clear that plaintiff's counsel had not supplied Mr. Smith with these documents and disclosures as of February 27, 2002, however, five days beyond the court's February 22, 2002 deadline.

---

[36] Defendant's Submission (doc. no. 19), at 5.

[37] *Id.* ¶ 8.

[38] *See* Order entered Feb. 14, 2002 (doc. no. 10).

[39] *See* Defendant's Reply (doc. no. 13), ¶ 4.

14

Plaintiff's counsel also has flouted the court's February 14 order by deliberately failing to provide defendant's counsel by February 22, 2002 with an executed authorization that would permit defendant access to plaintiff's school records. This document was not received by defendant's counsel *until March 2, 2002*, and, again, was sent via United States mail. Moreover, while Ms. Lyons claims that she was unaware that the authorization form had been left out of the February 19 document package to Mr. Smith (intimating that the form had been executed, but simply not "included"); the court questions the veracity of Ms. Lyons' explanation in light of the fact that authorization form was not even executed until *March 1, 2002*.[40]

Next, the court concludes that plaintiff's counsel failed to comply with this court's March 13, 2002 order that "*plaintiff Robert L. Gamble and his counsel appear before the court in Huntsville, Alabama* at 10:00 a.m. on March 22, 2002, and show cause, if any they have, why defendant's motion [to enforce court order and for sanctions] should not be granted and sanctions imposed."[41] Ms. Lyons and Mr. Perkins appeared at that hearing without Mr. Gamble. When the court inquired as to Mr. Gamble's whereabouts, Mr. Perkins offered the tenuous explanation that, "we did not understand that your order required that Mr. Gamble be present, only that his counsel be present."[42] Ms. Lyons concurred with her co-counsel in stating that she simply had not understood the language of the order. The court finds this explanation for defiance of its March 13, 2002 order implausible and unacceptable. Given these and the foregoing facts, the court finds that sanctions against plaintiff's counsel are deserved for their abuse of the discovery process and

---

[40] *See id.*, Ex. A (letter from Terrinell Lyons dated March 1, 2002).

[41] Order entered March 13, 2002 (doc. no. 14) (emphasis supplied).

[42] Transcript, March 22, 2002 hearing, at 1.

15

defiance of this court's orders.

A sanction of dismissal or default is not appropriate for this action, because the court believes that less drastic sanctions will ensure future compliance by plaintiff's counsel. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)). Awarding fees and costs to defendant's counsel will accomplish this objective, along with those enumerated in *Wouters*, above. *See Wouters*, 9 F.3d at 933. Further, considerations of equity would suggest that plaintiff's counsel should pay defendant's reasonable expenses stemming from the motion to enforce the court's order because defendant is a non-profit municipality — the legal fees and costs of which are paid for by taxpayers whose time and money have been wasted by the misconduct of Ms. Lyons and Mr. Perkins.

As noted above, Mr. Smith seeks attorney's fees and costs associated with defendant's motion to enforce the court's February 14 order in the amount of $3,853.45. Upon consideration of defendant's counsel's evidence — a schedule of hours, explanations of services performed, and affidavits of other attorneys with similar experience substantiating Mr. Smith's hourly rate — the court concludes that Mr. Smith's expenses in regard to this motion are reasonable. In addition, neither of plaintiff's attorneys objected to, or submitted evidence to controvert, defendant's submissions in support of the expenses and fees sought by defendant. *See Levin v. Rogers*, 156 F.3d 1135, 1142 (11th Cir. 1998). At the court's March 22 hearing, plaintiffs' counsel did suggest possible objections to the amount of hours and hourly billing rate charged by Mr. Smith. In the absence of a brief or other evidence from plaintiff's counsel to support these objections, however, the court finds them unpersuasive.

16

## III. CONCLUSION

Accordingly, defendant's motion to remove this case from the court's jury docket is due to be granted, while plaintiff's motion requesting a jury trial is due to be denied. The court further concludes that defendant's motion to enforce a court order and for sanctions is due to be granted to the extent that sanctions are awarded against both of plaintiff's counsel. Defendant's motion to enforce the court order is moot to the extent that the documents and disclosures sought by defendant pursuant to the court's order of February 14, 2002 have been supplied to defendant. An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of July, 2002.

United States District Judge

17